UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ANTOINE Y. EL HANI and
SHANE WILLIAMS,

CIVIL NO. 01-819 (ADM/JMM)

Petitioners,

v.

REPORT AND RECOMMENDATION

ROB MUNDT, Warden,
FCI-Waseca,

Respondent.

The above matter is before the undersigned upon Petitioner El Hani's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Docket No. 1], and Petitioner Williams' Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Prior Civil No. 01-862 (PAM/JMM), Docket No. 1]. The Petitions were consolidated by Order of this Court dated August 14, 2001. Petitioners appear pro se; Jeffrey S. Paulsen, Esq., Assistant United States Attorney, appears on behalf of Respondent in the matter of Petitioner El Hani; Joseph T. Walbran, Esq., Assistant United States Attorney, appears on behalf of Respondent in the matter of Petitioner Williams. The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).

Upon the following Findings of Fact/Report, it is recommended that the Petitions for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 be denied and the Petition be dismissed.

FILED AUG 14 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD______
DEPUTY CLERK______

## FINDINGS OF FACT/REPORT

### Background

Petitioner El Hani is currently serving a 240-month sentence imposed on September 13, 1993 for Distribution and Conspiracy to Distribute in Excess of One Kilogram of Heroin. See Decl. of Angela Buege Re El Hani, Attach. A. He has a projected release date of June 11, 2010. Id.

Petitioner Williams is currently serving a 72-month sentence imposed on December 4, 1996 for Aiding and Abetting Interference with Commerce by Threats or Violence, in violation of 18 U.S.C. §§ 1951 and 1952. See Decl. of Mary A. Benning Re Williams, ¶ 3. He has a projected release date of December 6, 2001 via good conduct time. Id. During the time period relevant to events that are the subject of this Petition, both Petitioners were housed at the Federal Correctional Institution in Waseca, Minnesota ("FCI-Waseca"). As of June 11, 2001, Williams has resided in a Community Corrections Center, commonly known as a halfway house. Id.

This Court consolidated the Petitions for habeas relief because they arise out of the same incident: the discovery of a makeshift weapon in a dorm-room at FCI-Waseca, for which both inmates were disciplined with a loss of good time credits. The undisputed facts surrounding the incident are as follows. On January 4, 2000, a prison officer found an anonymous note on the floor which indicated that he should look in Shane Williams' room for a weapon. The anonymous note itself is not part of the record. Williams and El Hani shared the room with two other inmates. The officer searched that room and discovered a toothbrush with four-inch screws taped to the handle underneath Williams' locker. See Decl. Pedersen Re El Hani, ¶ 2; Decl. Pedersen Re Williams, ¶ 2.

Later that same day an Incident Report was written, charging only Williams with Possession, Manufacture, or Introduction of a Weapon, ranked by BOP regulation as a greatest severity offense.[1] See Decl. Pedersen Re Williams, ¶ 3. Prison Officer Santini investigated the incident and in his Incident Report concluded that there was insufficient evidence to support the charge, as the item was found in a common area and not on the body or property of the inmate. Williams was given a copy of this report on January 5. The investigating officer referred the matter to the Unit Discipline Committee ("UDC") for further disposition. On January 11, 2000, the UDC referred the charge to a Disciplinary Hearing Officer ("DHO") as required by BOP regulation for all greatest severity offenses. See 28 C.F.R. § 541.13.

Twenty-four days after the weapon was found, on January 28, 2000, an Incident Report was written charging El Hani and the two other roommates with the same offense.[2] See Decl. Pedersen Re El Hani, ¶ 6, Attach. B, Incident Report. As in Williams' case, the investigating officer concluded that the evidence was insufficient to support the charge. Id. The charge was referred to the UDC for hearing, who referred the matter to a DHO for further hearing.

---

[1] See 28 C.F.R. § 541.13, Table 3 (Greatest Severity Offense, Code 104: Possession, manufacture, or introduction of a gun, firearm, weapon, sharpened instrument, knife, dangerous chemical, explosive, or any ammunition).

[2] The identities of the two other inmates are not in the record before this Court. It is not known whether they also filed petitions for habeas relief.

Petitioners had separate hearings before DHO Susan Pedersen on February 10, 2000. See Decl. Pedersen Re El Hani, ¶ 8; Decl. Pedersen Re Williams, ¶ 5. At the hearings, Petitioners were provided the opportunity to present witnesses, to have a staff representative appear on their behalf, and to make a statement in their defense. Williams had a staff member appear, but neither inmate called witnesses and both denied committing the offense.

In reports dated February 23 and 25, 2000, respectively, El Hani and Williams were each found to have committed the prohibited act of Possession, Manufacture, or Introduction of a Weapon while at FCI-Waseca. See Decl. of Susan Pedersen Re El Hani, ¶ 8, DHO Report; Decl. of Susan Pedersen Re Williams, ¶ 6, DHO Report. Ms. Pedersen included in her reasoning for both inmates: "the fact that since no one has accepted responsibility for this weapon, all inmates housing in this room must be held equally responsible." Id. As a result, El Hani lost 27 days of good conduct time and was subject to 30 days disciplinary segregation, with 20 days suspended pending his completion of 180 days of clear conduct. Id. at ¶ 8. Williams lost 40 days[3] of good conduct time and was subject to 30 days disciplinary segregation, with 20 days suspended pending his completion of 180 days of clear conduct.[4] Id. at ¶ 6.

---

3

On page one of his Petition, Williams claims he lost 47 days of good time, see Petition at p. 1, but later in his Petition states that he was sanctioned to a loss of 40 days of good time, see Williams' Petition at p. 5. Discipline Hearing Officer Pederson declared that Petitioner lost 40 days of good time as a result of the incident. See DHO Report, and Decl. Pederson, ¶ 6. Petitioner does not contest that he lost 40 days in his Traverse [Docket No. 11].

4

DHO Pedersen noted in her "Reason for Sanction" section that Williams was sentenced for a violent crime and classified as a VCCLEA inmate, while El Hani was not. Such a classification mandates a loss of between 50% and 75% of good time credit available, see 28 C.F.R. § 541.13(a)(1), and may explain the different sanction imposed on the two Petitioners.

El Hani and Williams appealed the DHO decision to the Regional and Central Office appeals boards, thereby exhausting the BOP's administrative remedy process. See Decl. Buege Re El Hani, ¶ 4, Ex. 2; Decl. Benning Re Williams, ¶ 6, Attach. B.[5] In their appeals, Petitioners challenged the sufficiency of the evidence supporting the finding of guilt. They stated that the room in question does not have a door and is accessible to over 150 inmates who could have deposited the weapon beneath Williams' locker. Petitioners named another inmate, Gary Massey, as the individual probably responsible for the anonymous note and the weapon, and alleged that this inmate was attempting to frame them for the offense. They asked that staff conduct further investigation including fingerprinting. Petitioners also complained that the DHO improperly relied on information from a confidential informant (the anonymous note) in making her decision. Petitioner El Hani made the additional complaint that the Incident Report and UDC hearing were untimely and thus, in violation of his due process rights.

Their appeals were denied in all respects. BOP officials responded that sufficient evidence supported the DHO decision and no due process violations occurred. They refused to conduct further investigation into the incident. These Petitions for Writs of Habeas Corpus followed. Petitioners challenge the DHO finding and sanctions on the same grounds raised in the internal grievance process: that the DHO's finding is not supported by sufficient evidence as required by BOP regulation, that the DHO violated their due process rights by failing to disclose confidential information, and in the case of El Hani, that the Incident Report and hearing were untimely. See El Hani Petition, p. 2; Williams Petition, p. 2.

---

[5] It appears that Petitioners worked together in their challenges to the DHO findings. Their administrative appeals, as well as their current Petitions, are nearly identical.

## Discussion

### I. THE DHO DECISIONS ARE SUPPORTED BY SUFFICIENT EVIDENCE.

#### A. Standard of Proof Required for a Disciplinary Sanction.

Statutory good time credits have been held to constitute liberty interests invoking due process safeguards. See Wolff v. McDonnell, 418 U.S. 539, 555 (1974); Dawson v. Smith, 719 F.2d 896, 898 (7th Cir.1983). But due process rights owed to an inmate are limited by the "needs and exigencies of the institutional environment." Wolff, 418 U.S. at 555. Where the loss of good time credits is a possible disciplinary sanction, the Supreme Court has determined that an inmate must receive: 1) at least 24 hours advanced written notice of the charges; 2) the right to call witnesses except where security and the order of the institution would be jeopardized; 3) the right to a staff or other representative where charges are complex or the inmate is illiterate; and 4) the right to a written report of the decision of the discipline committee setting forth the specific evidence relied on and a reason for the sanction; and 5) an impartial hearing committee. Id. at 564-566. Neither El Hani nor Williams dispute that the Wolff procedural safeguards were provided at their hearings. See El Hani Memo., p. 3; Williams Memo. p. 2-3.

Due process also requires that "some evidence" support the decision of the prison disciplinary board. Superintendent, Massachusetts Correctional Inst. v. Hill, 472 U.S. 445, 455 (1985). In balancing the interests of prison administration against the liberty interests of inmates, the Court stated: "requiring a modicum of evidence to support a decision to revoke good time credits will help to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens." Id.

Petitioners argue that a higher standard of proof than the Constitutional minimum of "some evidence" should apply to review of the DHO's decision. They contend that a "greater weight of the evidence" standard should be applied. They cite BOP regulation at 28 C.F.R. § 541.17(f) which states in relevant part:

> The DHO shall consider all evidence presented at the hearing. The decision of the DHO shall be based on at least some facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence.

28 C.F.R. § 541.17(f). BOP Program Statement defines "some facts" as "facts indicating the inmate did commit the prohibited act" and the phrase "greater weight of the evidence" as "the merits of the evidence, not its quantity nor the number of witnesses testifying." See P.S. 5270.07, Ch. 7, p. 6, Peterson Decl., Attach. E.

If there were a conflict in the evidence, we agree that the "greater weight of the evidence" standard should be applied. See 28 C.F.R. § 541.17(f). Habeas relief extends where a prisoner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3)(emphasis added). A formally promulgated agency regulation constitutes a 'law of the United States' for purposes of the habeas corpus statute. See Henderson v. Carlson, 812 F.2d 874, 879 (3d Cir. 1987). Therefore, where a BOP regulation creates a higher standard of proof for a disciplinary charge, that higher standard should apply to an inmate's habeas challenge to the disciplinary decision. See Henderson, 812 F.2d at 879 (3d Cir. 1987)(disciplinary committee decision should have been reviewed under higher "substantial evidence" standard as mandated by prison regulation, rather than minimum constitutional due process requirement of "some evidence"

because the BOP regulation was a law of the United States).[6]

In Goff v. Dailey, 991 F.2d 1437 (8th Cir. 1993), even though Goff was a state prisoner not subject to federal regulations, the Eighth Circuit briefly discussed the same BOP regulation that is at issue in this case, requiring that a disciplinary decision be supported by "some facts" and, if there is conflicting evidence, by the "greater weight of the evidence." See 28 C.F.R. 541.15(f)(1992). In a footnote, the Court suggested that "some evidence" is the standard of proof where no conflicting evidence is presented, but the greater weight standard applies when an inmate provides conflicting evidence to the disciplinary committee. See Goff, 991 F.2d at 1442 n. 9 ("Under the federal scheme [28 U.S.C. § 541.15(f) (1992)], inmates are not entitled to a preponderance standard unless there is conflicting evidence").

**B. The DHO Decisions Comply with the BOP Regulation.**

In this case, it is not manifest that Petitioners presented conflicting evidence to the DHO so as to invoke the higher "greater weight" standard. In essence, the only evidence presented was Petitioners' unsubstantiated denials of the charges, which we doubt constitutes conflicting evidence. See Goff, 991 F.2d at 1439, 1441 n. 9 (inmate was found not to have provided conflicting evidence even though he denied the charge of directing a threatening statement at a staff member, although he did not deny making the

---

6

The "substantial evidence" standard that was applied in Henderson pre-dates the July, 1987 regulation change. In that case, the relevant BOP regulation at the time required the disciplinary committee to "make a decision. . . which is supported by *substantial evidence* manifested in the record of the proceedings." 28 C.F.R. § 541.17(f)(1986) (emphasis added). But that regulation was changed after Hendersen, and is no longer in effect.

statement itself). At the hearing, El Hani disavowed ownership, stating "all I can tell you is I don't know anything about the shank." See DHO Report Re EL Hani, p. 1. He did not present witnesses or have a staff member appear on his behalf. Williams also denied responsibility. See DHO Report, p. 1. The only other evidence presented was the testimony of a staff representative who appeared on Williams' behalf and stated that "she has known inmate Williams for about a year. . . and does not believe that this weapon was his." Id. Petitioner Williams also presented an alternative explanation as to how the weapon came to be under his locker. He stated that he heard about a "snitch note," and suggested that he was framed by the author of the note. But again, Petitioner offered no evidence in support of his claim.

Even considering this evidence to be conflicting, the DHO's findings of guilt were in fact made upon the greater weight of the evidence presented at Petitioners' hearings, and therefore comport with BOP regulation at 28 C.F.R. § 541.17(f). The evidence included the Incident Reports describing the discovery of the weapon:

> On 01/04/2000, at approximately 4:50 PM, while conducting a contraband search of Room B-210, staff found a toothbrush which had been altered into a weapon. The toothbrush had two four inch screw [sic] taped to the handle. The screws were taped in the handle with approximately two and a half inches protruding past the end. This weapon was underneath the locker assigned to inmate Williams. Inmate El Hani is also assigned to this room.

See DHO Report Re El Hani; see also DHO Report Re Williams (citing Incident Report). All four occupants had access to the area beneath Williams' locker.

The DHO held both El Hani and Williams responsible for the weapon based on "constructive possession" reasoning. Under the constructive possession rule, a prisoner is considered "responsible for anything found in his cell, absent exculpatory

evidence that makes the finding of petitioner's 'possession' so unreliable as to not satisfy the minimum constitutional standard that some reliable evidence supports the disciplinary decision." Thompson v. Hawk, 978 F.Supp. 1421, 1423 (D. Kan. 1997)(citing Hamilton v. O'Leary, 976 F.2d 341 (7th Cir. 1992). The DHO's reasoning in both Petitioners' reports is almost identical to that which was approved in Thompson and Hamilton: she cites the facts that the weapon was discovered in Petitioners' room and no one claimed ownership of the weapon, coupled with the fact that BOP policy holds inmates accountable for contraband found in their areas of responsibility. See DHO Report Re El Hani, p. 3; DHO Report Re Williams, p. 3.[7] None of these facts were contested at the hearings.

The Courts in Hamilton and Thompson reached their result based upon the application of a "some evidence" standard, since the challenge was presented only on due

---

[7] The DHO Reports state in relevant part:

> Based on the fact that BOP policy holds inmates accountable for items found on their person or in their area of responsibility, and inmate [El Hani's][Williams'] room is his area of responsibility; the fact that none of the inmates housed in this room has come forward and admitted to ownership of this weapon, the fact that since no one has accepted responsibility for this weapon, all inmates housing in this room must be held equally responsible; and the statement of Officer J. Erickson, in the body of the incident report, that while conducting a contraband shakedown of Room B-210, he found a toothbrush, which had been altered into a weapon. . . , taped underneath the locker of inmate Williams, which the other roommates had access to, . . . this DHO finds that the greater weight of the evidence supported the finding that inmate [El Hani][Williams] did commit the prohibited act of possession, manufacture, or introduction of a weapon, Code # 104.

See DHO Report Re El Hani, p. 3; DHO Report Re Williams, p. 3.

process grounds. We are satisfied that the same result would have been reached, and should be reached in this case where the challenge is based upon the "greater weight of the evidence" standard in the regulation. In those cases, as in this case, any conflict in the evidence was in the form of the denials by the prisoners; the result in this case should be no different.

Constructive possession analysis "adopts a probability assessment of the likelihood of the prisoner's involvement in the alleged misconduct." Thompson, 978 F.Supp. at 1423; see also Hamilton, 976 F.2d at 341. El Hani and Williams are two of four inmates who shared the room in which the weapon was discovered. Under similar facts in Hamilton, where the plaintiff was one of four inmates charged with possession of a weapon after a handgun was found in their shared cell, the Seventh Circuit held that a one in four probability, or 25% likelihood, that a prisoner is responsible for a weapon constitutes "some evidence" of guilt, satisfying due process. See Hamilton, 976 F.2d at 345. See also Hill, 472 U.S. at 456-457 (three inmates seen fleeing from assault, all three disciplined); Mason v. Sargent, 898 F.2d 679, 680 (8th Cir. 1990)(contraband found in locker shared by two inmates, 50% probability of guilt constitutes "some evidence").

El Hani and Williams further argue that the weapon could have been placed by any of 200 inmates who have access to their room as a result of the prison's open door policy, thereby reducing the probability assessment to one in 200 or .5%, rather than one in four. See Hamilton, 976 F.2d at 346 ("we doubt that a 3.1% [one in 32] chance is 'some evidence' of guilt"). A prisoner made the same argument in Thompson, 978 F.Supp. at 1423. In that case, a weapon was found in the vent of a cell solely occupied by the

petitioner, but the cell was accessible by any inmate in the general population from 6 a.m. to 10 p.m. The court rejected the prisoner's argument that a probability assessment must be based on the entire general population, and held that the discovery of contraband in an inmate's cell satisfied the "some evidence" standard. Thompson, 978 F.Supp. at 1423.

## II. CONFIDENTIAL INFORMATION

Petitioners further argue that the DHO violated due process by relying on information from a confidential informant (the anonymous note) without disclosing to them the contents of the note. "A bald assertion by an unidentified person, without more, cannot constitute some evidence of guilt." Freitas v. Auger, 837 F.2d 806, 810 (8th Cir. 1988). Thus, when a disciplinary decision relies on information provided by a confidential informant, due process requires a determination of the reliability of the confidential informant.[8] Id. In Freitas, a prison disciplinary decision expressly relied on information provided by confidential informants that the petitioner was conspiring to escape.

In this case, however, the DHO's findings are neither expressly nor implicitly based upon confidential information. The anonymous note prompted a search of the room. See Decl. Pedersen, ¶ 9, Attach. A. The findings of guilt were not based on the note, but

---

[8] Reliability of a confidential informant can be established by:

> 1) the oath of the investigating officer as to the truth of his report containing confidential information and his appearance before the disciplinary committee . . . , 2) corroborating testimony . . . 3) a statement on the record by the chairman of the disciplinary committee that, "he had firsthand knowledge of the sources of information and considered them reliable on the basis of their past record of reliability, or 4) in camera review of material documenting the investigator's assessment of the credibility of the confidential informant.

Freitas, 837 F.2d at 810 n. 9.

upon the presence of a weapon in Petitioners' room. See DHO Report, *supra*. DHO Pedersen stated in her declaration: "I did not utilize any confidential informant information during the DHO hearing, but relied upon the information in the body of the incident report written by Officer Erickson which stated that a weapon was found under [Williams'] locker in [Williams'] cell." See Decl. Pedersen, ¶ 8.

In their Traverses, Petitioners dispute the DHO's contention that she did not rely upon the anonymous note. See El Hani Traverse, p. 1-2, 10; Williams Traverse, p. 1-2, 7. In support, they cite a portion of the DHO Report which states: "this weapon was found taped underneath the locker of inmate Williams." See DHO Report, p. 3 (emphasis added). Petitioners contend that no evidence was presented at the hearing indicating that the weapon was "taped" underneath Williams' locker. Neither the Incident Reports, nor any other investigative material alleged that the weapon was taped. See Petitioners' Traverses, p. 1. Therefore, Petitioners reason, "if such evidence did exist, then that evidence had to have come from the 'drop note' written by the informant and delivered to Officer Erickson – a note the Government and DHO now claim was not considered during the DHO hearing." Id. at 2.

It is not clear why DHO Pedersen referred to the weapon as being taped underneath the locker when the Incident Reports say only that the weapon was found underneath the locker. Regardless, the result is the same whether the weapon was taped or not, since the existence of the weapon itself is the evidence to support the charge, not the means by which it was hidden. Moreover, the result is the same even if DHO Pedersen derived the notion that the weapon was taped from the drop note since the decisions were still not based on a "bald assertion by an unidentified person, without more." Freitas, 837

F.2d at 810. The decisions are supported by sufficient evidence wholly separate from the note: the existence of a weapon in a shared room for which no one claimed ownership.

Petitioner El Hani further argues that the due process requirement of Brady v. Maryland, 373 U.S. 83 (1963), that prosecutors in a criminal case disclose all material exculpatory evidence, applied to his prison disciplinary hearing. In that regard, he contends that the anonymous note should have been disclosed because it names inmate Williams, not Petitioner, and therefore constitutes exculpatory evidence. Petitioner claims the existence of the note was not made known to him until after the hearing. See Petitioner's Memo., p. 18. Prisoners are entitled to disclosure of material exculpatory evidence in prison disciplinary proceedings. See Campbell v. Henman, 931 F.2d 1212, 1214 (7th Cir. 1991). However, the anonymous note is neither materially relevant or exonerating. The anonymous note would not "exculpate" El Hani even if it had named Williams. At most, it would serve as "some evidence" against Williams, if other standards of reliability were met. Petitioner was not denied due process in this regard.

**III. TIMING OF THE INCIDENT REPORT AND HEARING.**

Petitioner El Hani contends that Respondent violated his due process rights by failing to provide notice of the charges within twenty-four hours of discovery of the weapon in his room. He bases his argument on two BOP regulations which indicate that an inmate "ordinarily" receives written notice of charges against him, via an Incident Report, within twenty-four hours of the time staff become aware of the inmate's involvement in the incident. Title 28 C.F.R. § 541.11, *Notice to Inmate of BOP Rules*, Table 2 provides a timeline of prison disciplinary procedures. It states in relevant part, that

once staff become aware of an incident, "ordinarily [a] maximum of 24 hours may pass until staff give notice of disciplinary charges."[9] Likewise, 28 C.F.R. § 541.15(a), *Inmate Discipline and Special Housing, Initial Hearing*, states: "s]taff shall give each inmate charged with violating a Bureau rule a written copy of the charge(s) against the inmate, ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the incident." In this case, prison officials gave notice twenty-four days later, not within twenty-four hours, "due to an administrative error." See Decl. Pedersen Re El Hani, ¶ 6.

El Hani also contends that his hearing before the UDC was untimely held, in violation of BOP regulation at 28 C.F.R. § 541.15(b). That regulation states that said hearing is "ordinarily held within three work days from the time staff became aware of the inmate's involvement in the incident." El Hani's UDC hearing was held on February 3, 2000, thirty days after staff became aware of the incident. Id. at ¶ 7. Petitioner contends that officials violated his due process by violating their own regulations.

The BOP regulations all contain the qualifying word "ordinarily," clearly indicating that it is the customary, but not required, practice to provide an inmate with notice within twenty-four hours and a hearing within three workdays. The regulations do not mandate that these procedures occur, and do not themselves create a due process liberty interest in establishing a temporal relationship between the events at issue. See Zacher v. Tippy, 202 F.3d 1039, 1041 (8th Cir. 2000)(statutory language that is permissive,

---

9

The regulation is a timeline, presented in table form, reading as follows: "1. Staff becomes aware of inmate's involvement in incident -- ordinarily maximum of 24 hours -- 2. Staff gives inmate notice of charges by delivering Incident Report." 28 C.F.R. § 541.11, Table 2.

rather than mandatory, does not create due process liberty interest). In addition, the fact that El Hani received notice twenty-four days, and his hearing thirty days, after the event has not caused him an "atypical and significant hardship," the sort of deprivation required by the Supreme Court to invoke due process protections via a prison regulation. See Sandin v. Conner, 515 U.S. 472, 484 (1995)(due process liberty interests created by prison regulations will be generally limited to freedom from restraint which imposes atypical and significant hardship on inmate in relation to ordinary incidents of prison life). El Hani has not alleged any prejudice as a result of the extra time that passed between the event and his charge or hearing.

With respect to timeliness, due process requires only that El Hani receive advanced written notice of charges against him at least twenty-four hours prior to his disciplinary hearing. Wolff, 418 U.S. at 564. He received the report on January 28, 2000 and had ample notice to prepare for a February 3 UDC hearing and the subsequent February 10 hearing before the DHO. See Wolff, 418 U.S. at 564 ("[p]art of the function of notice is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact"). Providing additional time does not violate El Hani's due process rights with respect to timeliness. See e.g., Vargas-LaVerde v. Lappin, 234 F.3d 1275, *1 (7th Cir. 2000)(unpublished)(due process not violated by prison officials' failure to deliver incident report until three months after offense took place); Houser v. Luttrell, 103 F.3d 129, *2 (6th Cir. 1996)(unpublished)(due process not violated by failure to deliver report within twenty-four hours of the incident).

**RECOMMENDATION**

For the reasons set forth above, it is recommended that the Petitions for Writs of Habeas Corpus Pursuant to 28 U.S.C. § 2241 be denied and the Petitions be dismissed.

Dated: August 14, 2001

JOHN M. MASON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **August 29, 2001** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.